ALICE TEFFT *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 14, 1933. — January 3, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Negligence*, Street railway.

At the trial of an action of contract by a woman passenger against a street railway company, there was evidence showing merely that, after the plaintiff had been carried by a regular stopping place where she had requested to be permitted to alight, the motorman stopped the car at a point one hundred feet beyond such regular stopping place and opened the door; that the plaintiff, without requesting aid, alighted there; that at that point the distance between the car step and the surface of a reserved space upon which the tracks were was one foot greater than it was at the regular stopping place; that it was dark at that place and wet and muddy; that the motorman did not warn the plaintiff nor assist her to alight; that her foot sank in the mud; and that she was injured. There was no evidence that the car step was improper or that the reservation at or near the place where the car stopped was one which, by reason of its contour or relation to surrounding conditions, was unsuitable for the discharge of passengers. A verdict was ordered for the defendant. *Held,* that

(1) In the circumstances, the motorman was under no duty to assist the plaintiff in alighting;

(2) There was no evidence of negligence on the part of the defendant;

(3) The verdict for the defendant properly was ordered.

CONTRACT.    Writ dated March 8, 1932.

The declaration is quoted in the opinion. The action was tried in the Superior Court before *Morton,* J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*A. Gottlieb,* for the plaintiff.

*R. L. Mapplebeck,* for the defendant.

PIERCE, J. This is an action of contract to recover for personal injuries to the plaintiff, received by her on December 29, 1931. At the close of all the evidence the judge directed the jury to return a verdict for the defendant. The case is before this court on the plaintiff's exceptions

to the allowance of the defendant's motion for a verdict in its favor.

The declaration in the action reads as follows: "And the plaintiff says that the defendant is a street railway company engaged as a common carrier, to transport persons for hire; that on or about December 29, 1931, in consideration of the fare paid by the plaintiff to the defendant, the defendant agreed to carry and transport the plaintiff; that in pursuance of said contract, the plaintiff boarded an outbound Franklin Park car at Andrew Square; that the defendant, its agents or servants was bound to exercise the highest degree of care in enabling and permitting the plaintiff, as a passenger, to alight from said car; that in violation of the duty imposed under said contract, the defendant by its agents or servants failed to stop said car at a regular stopping place, but traveled beyond such place, to a place of danger, and that without warning permitted the plaintiff to alight; that because of the dangerous condition of the ground at the stopping place, and because of the breach of duty of the defendant, its agents or servants, towards the plaintiff as aforesaid, the plaintiff broke and sprained her foot, suffered great pain both in body and mind, was confined to bed and at her home, was unable to work for a long period of time, and was otherwise greatly damaged as she alleges in her writ."

In support of the declaration, the plaintiff at the trial introduced evidence which would warrant the jury in finding that on December 29, 1931, at about 5:30 P.M., the plaintiff, a woman, boarded an outbound Franklin Park car of the defendant at said Andrew Square, Boston; that her destination was the stop at the corner of Stanwood Street and Columbia Road, Dorchester; that when the car reached Devon Street, a block before her destination, she pressed a button near her seat as a signal for the motorman to stop at Stanwood Street, and "then walked toward the front of the car to alight"; that she was close to the motorman when the car was about thirty feet from the regular stopping place at Stanwood Street, and said to him "Please, next stop"; that the car did not stop when Stanwood

Street was reached; that she asked the motorman why he did not stop it and he replied that he did not hear her; that the car travelled about one hundred feet beyond the regular stopping place at Stanwood Street, and then the motorman stopped it, opened the door and the plaintiff started to alight; that when the door was opened a step folded down and there was a space of one foot on the reservation from a point directly beneath the edge of the step to the edge of the reservation on the outbound side; that the distance from the step when folded down to the reservation at this point was about one foot greater than at the regular stopping place, owing to the lower grading of the surface of the reservation and higher position of the tracks as compared to the surface and the tracks at the regular stopping place. The plaintiff testified, and the jury were warranted in finding, that it was dark at the time and place of the accident, that the place upon which she alighted "was wet and muddy," and that her "foot sunk in the mud," with the result that she sustained a fracture of a bone in her left foot.    The evidence warranted the further findings that the motorman gave the plaintiff no warning of the surrounding conditions as she alighted, and he did not in any way undertake to assist her off the car; that the plaintiff had lived in the vicinity of the place of the accident for two years and had never before the accident noticed the distance from the step to the reservation at that point; that she never before had alighted from a street car on a reservation other than at the regular stopping place; that she was the only person who alighted when the car stopped, and she did not know that, if she stepped off the car where she did, the distance would be much greater than it would be either at the stop at Stanwood Street or at the stop at Geneva Avenue; that she knew the car had gone beyond the regular stopping place, and she looked down as she started to go out, but there was nothing she could see to indicate to her that it was not all right for her to alight; that since the accident, though not before, she has noticed the difference in the height of the step at the place where she alighted and its height at the regular stopping place at Stanwood Street.

The evidence warranted the further finding that the plaintiff "was wearing cuban heeled shoes and not high heeled shoes at the time she was hurt."

A passenger, ready and willing to pay a common carrier the amount which it was legally entitled to receive for carriage, who receives an injury while so travelling in consequence of the negligence or misconduct of the carrier or of his driver or servant, may, at his election, sue the carrier on the contract implied in law for conveyance or in tort, the measure of the carrier's duty being the same in either form of action. *McElroy* v. *Nashua & Lowell Railroad*, 4 Cush. 400. *Eaton* v. *Boston & Lowell Railroad*, 11 Allen, 500, 505. The declaration does not allege, and there is no evidence reported to warrant a finding, that the step of the car from which the plaintiff alighted was improper in design or construction when considered in relation to the practical operation of the defendant's business. Nor is there any allegation in the declaration, or evidence to support a finding, that the reservation at the point or near the place where the car stopped was a place which, by reason of its contour or relation to surrounding conditions, was a place unsuitable for the discharge of passengers. The contention of the plaintiff is that the motorman, in view of the unusual distance of the step from the ground and the soggy condition of the reservation at the place where the car stopped, was guilty of negligence in not warning her of the danger in alighting or in not assisting her off the car.

The evidence required the finding that the car was stopped by the motorman about one hundred feet beyond the place where the plaintiff requested that it be stopped; that she knew when the car stopped that it had passed the stopping place at Stanwood Street, and there was nothing, save the darkness, to indicate to the plaintiff or to the motorman that the height of the step made the place of alighting one of danger. It is settled that ordinarily it is not the duty of a motorman or other servant of a carrier to assist passengers to alight when, as here, no request for aid is made and the necessity therefor is not apparent. *Gatchell* v. *Boston Elevated Railway*, 238 Mass. 185, 186–187. *Kinnarney* v. *Mil-*

*ford & Uxbridge Street Railway*, 241 Mass. 127, 130.  We find in the record no evidence to warrant a finding of negligence of the carrier or of its servant in the case at bar.

*Exceptions overruled.*